JOHN OSTROM *vs.* BRINTON JACOBS & another.

In a suit against surviving partners, to recover the amount of a note given by the de ceased partner in his single name, his declarations that the transactions for which the note was given were for the partnership business, and that it was a company note, are not admissible in evidence, if there be no evidence *aliunde* that those transactions were for the partnership.

Nor is evidence admissible, in such suit, that one of the surviving partners, after the death of the partner who signed the note, recognized the note as one which the firm were bound to pay, and attempted to borrow money to pay it, and offered to take it up and give the note of the survivors in lieu of it, if it be not shown that this was known or consented to by the other survivor.

When, in such suit, there is no evidence that the surviving partners, before the death of the other partner, had knowledge of, or gave consent to, his giving notes in his own name alone for the debts of the firm ; and there is evidence that he, when he gave such notes, charged the amount thereof against the firm, as cash ; and also evidence that the plaintiff knew of the partnership, and made charges against the firm, in other cases ; the declarations of the deceased partner, when he borrowed the money for which the note was given, are not admissible in evidence against the survivors.

ASSUMPSIT for goods sold and delivered, work done and materials found, and money had and received. The defendants were described as "surviving partners of Philo Upson, deceased, and, as such partners, trading under the firms and styles of Philo Upson & Company, and Jacobs, Conrog & Company." The plaintiff filed, as a bill of particulars, copies of two promissory notes, signed by Philo Upson, payable to the plaintiff on demand, with interest ; one dated March 30th 1839, for $550 ; the other dated April 29th 1839, for $1000. At the term when the trial was had, the plaintiff filed two new counts, one on each of said notes, alleging that Brinton Jacobs and John Conrog (the defendants) and Philo Upson, by their promissory note in writing, made and signed by the said Upson, promised the plaintiff to pay him, &c.

At the trial before *Hubbard*, J. the plaintiff, to prove the partnership of Jacobs, Conrog & Upson, gave in evidence the affidavit of Jacobs & Conrog, dated November 14th 1840, relating to the accounts between them and Upson, and filed with the commissioners to examine the claims on his estate. in which they called themselves two of the late firm of Jacobs, Conrog & Upson, in the marble business. The plaintiff

also called R. R. Root as a witness, who testified that he was the clerk and agent of Upson, in the business in which he was engaged with Jacobs & Conrog — which was the quarrying of marble, and shipping it at Hudson for Philadelphia, under a contract with the trustees of the Girard College, to furnish the pillars for that institution ; that the business was large ; that Upson resided in Egremont, near the quarry ; that he was the active partner there, and had the supervision of all the business, and hired the men to carry it on ; that he purchased the oxen and horses that were employed in the business, and bought the hay and grain on which they were fed ; that he gave notes for the articles purchased for the use of the firm, signed with his own name only ; that the witness never knew him to give a note in the name of the firm ; that the witness knew Upson's mode of doing business from October 1838 to January 13th 1840, when he was lost in the steamboat Lexington.

It also appeared that Upson procured funds for the use of the company by drafts on Jacobs in Philadelphia, which were discounted at the Housatonic Bank in Stockbridge ; and that, in the summer of 1839, the partners in Philadelphia were in advance to Upson about $7000, and at the close of the year about $3500.   There was no evidence that those partners ever knew or consented to Upson's giving notes in his own name for the use of the company.   The articles purchased as aforesaid, and the debts paid by Upson's notes, were charged as cash, in his account with his partners.

The plaintiff offered to give the declarations of Upson in evidence, to show that the transactions, for which the notes in suit were given, were for the partnership business, and that they were company notes. But, the fact not being established *aliunde* that said transactions were partnership ones, the evidence was rejected.

There was evidence tending to show that the plaintiff let Upson have money, to the amount of the notes in suit, on the days of the dates of the notes, and that said money was paid by Upson, in discharge of debts of the company.   Evidence

was also given, that Upson was extensively engaged in business on his private account, and that the plaintiff lived within five miles of him, and was acquainted with his business.

John F. Collier, a witness called by the plaintiff, testified, that in April 1840, after Upson's death, Jacobs came from Philadelphia to Egremont, where Upson lived, and to Hillsdale, (N. Y.) the adjoining town, where the plaintiff lived; and that Conrog came there in October 1840; and the plaintiff offered to prove, by this witness, that the defendant Jacobs recognized the notes then held by the plaintiff as notes which the firm were liable to pay, and stated that he was not then prepared to pay them, but wished to borrow $1000 of the witness, to pay on account of the notes, and offered to take them up and give the notes of the survivors in lieu of them. But, as the plaintiff did not propose to give any evidence that Conrog, the other defendant, knew or consented to this, the testimony was rejected.

It was in evidence that there was a third note for $500, given by Upson to the plaintiff for the moneys due to him for keeping the cattle of the firm, which note was outstanding at the time of Upson's death; and also another note of $57, given on settlement of an account of the plaintiff for grain; which account was made out by the plaintiff to Philo Upson & Co. This last note was proved to have been paid by Jacobs, in 1840.

The plaintiff offered to prove, by a witness, the declarations of Upson, when he applied to borrow the $1000 of the plaintiff, for which one of the notes in suit was given; but the testimony was rejected.

In consequence of the rejection of the evidence offered at the trial, the plaintiff became nonsuit. Nonsuit to be set aside, and a new trial granted, if the evidence was wrongly rejected; otherwise, the nonsuit to stand.

*Bishop,* for the plaintiff.

*Sutherland* of Hudson, (N. Y.) & *Byington,* for the defendants.

The opinion of the court was delivered at September term 1846.

DEWEY, J. The question is, whether the evidence offered by the plaintiff was rightly rejected by the judge. The issue was as to the joint liability of Brinton Jacobs and John Conrog with Philo Upson, on the notes sought to be recovered. The notes, on the face of them, purported to be signed by Upson alone. The evidence which was offered and admitted tended to show a limited partnership between the defendants and Upson in the business of furnishing marble for the Girard College. The name of the firm, as set forth in the writ, was Philo Upson & Co. and Jacobs, Conrog & Co.

Had the notes been executed under the name of Upson & Co., or Jacobs, Conrog & Co., the great difficulties arising in the case would have been obviated. But such was not the case ; and the further fact is found, that Upson was extensively engaged in business on his own private account. The question then arises upon the competency of the proof, which was rejected, to establish the liability of the defendants upon *these notes.*

The plaintiff offered, *first,* to give in evidence the declarations of Upson, to show that the transactions for which the notes were given were for the partnership business, and that the notes were company notes. This evidence was, as we think, properly rejected, under the various decisions that have been made, and especially in our own court. The case directly in point is that of *Tuttle* v. *Cooper,* 5 Pick. 414, establishing the position, that the admission of one of the parties alleged to be partners is incompetent to show that a note was a partnership transaction. In *Robbins* v. *Willard,* 6 Pick. 464, although *prima facie* evidence of a partnership had been given, yet it was held that the declaration of one of the parties was not competent evidence to establish the partnership. Now the whole inquiry here was, whether these were partnership notes. Nothing on the face of them indicated that they were such. The objection to the competency of the declarations of Upson to charge this upon the partnership is the same in principle as if his admissions were offered to establish the fact of a partnership ; inasmuch as that fact was unavailing, unless

these notes were given by the partners. This evidence was, upon principle and authority, properly rejected.

The plaintiff then offered to show, *secondly,* that at some period after Upson's death, Jacobs, one of the defendants, "recognized" these notes as notes which the firm were liable to pay, wanted to borrow money to pay them, and offered to take them up and give the notes of the survivors in lieu thereof; but the plaintiff not proposing to offer any evidence that Conrog, the other defendant, had any knowledge of this, or gave any consent thereto, the evidence was rejected. This point of the ruling is undoubtedly more questionable. The evidence offered was the admission of one of those not interested to give to these notes a partnership character, and thus to release Upson from two thirds of the liability. It is the admission of a party against his own interest, and therefore, upon general principles, would be admissible. But the difficulty arises from the application of the evidence to the peculiar state of the parties to this action. It is a joint action against Jacobs & Conrog ; and the attempt is to establish the joint liability of these parties by the admissions of Jacobs, after the dissolution of the partnership (if any existed) by the death of Upson. Now, whatever effect might be given to the admissions of Jacobs, to charge himself as a partner with Upson, most clearly Jacobs can no more, by his admissions, charge Conrog as a partner in a firm of Upson, Jacobs & Conrog, than Upson could, by his admissions, charge Conrog, or both Jacobs & Conrog. The fact that Jacobs & Conrog may be jointly interested, as partners, in certain other matters, does not affect the present question, or give any greater legal effect to the admissions of Jacobs, than if such other connexion did not exist. The court are therefore of opinion, that the proposed evidence of the admissions of Jacobs was not competent to charge Conrog.

The further declarations of Upson, at the time he applied for the loan, were also, under the circumstances of the present case, inadmissible. The note was not made in any partnership name assumed by the firm or recognized by the other

partners. The report of the case states that there was no evidence that. prior to the death of Upson, the defendants had any knowledge of, or consented to the giving of, notes in his name alone, for partnership liabilities. It further finds that, whenever Upson gave his personal note for articles purchased for the partnership, he charged the amount of such note against the firm, as cash paid for them. It also finds that the plaintiff knew of the partnership, and had made charges against them as a company. Upon these facts, the taking of the individual note of Upson must be considered a credit to him, and does not create a liability on the part of the defendants. *Green* v. *Tanner,* 8 Met. 411.

*Nonsuit to stand.*